CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

2015 FEB -6  PM 4: 02

DEPUTY CLERK_____

| | | |
|---|---|---|
| CALVIN JARROD HESTER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:12-CV-79 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION TO DENY PETITION FOR
## A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Petitioner CALVIN JARROD HESTER filed a Petition for a Writ of Habeas Corpus by a

Person in State Custody challenging his convictions out of the 108th Judicial District Court of

Potter County, Texas, for the offenses of possession of marijuana in Cause No. 54,995-E;

possession with intent to deliver a controlled substance (cocaine) in Cause No. 54,996-E; and

possession with intent to deliver a controlled substance (methamphetamine) in Cause No.

54,997-E. For the reasons set out hereafter, the United States Magistrate Judge is of the opinion

petitioner's application for federal habeas corpus relief should be DISMISSED regarding the

marijuana conviction and DENIED regarding the cocaine and methamphetamine convictions.

I.
## FACTUAL AND PROCEDURAL BACKGROUND

In April 2007, petitioner was indicted in Potter County, Texas, for possession of

marijuana, possession with intent to deliver a controlled substance (cocaine), and possession with

intent to deliver a controlled substance (methamphetamine). Petitioner entered a plea of guilty in each case, with no agreed recommendation on punishment. The judgments in the cocaine and methamphetamine cases state petitioner pleaded not true to the enhancement paragraph alleging a prior conviction in each case, but the Reporter's Record shows petitioner pleaded true to the enhancement allegation in both cases. Reporter's Record Vol. 2, p. 15-16.

The trial court made an affirmative finding that petitioner used or exhibited a deadly weapon in each case. On November 7, 2007, punishment was set by the trial court at two years in the marijuana case, thirty years in the cocaine case, and thirty years in the methamphetamine case. The judgments were affirmed on appeal. *Hester v. State*, Nos. 07-07-0473-CR, 07-07-0474-CR, 07-07-0475-CR, 2009 WL 3925359 (Tex. App. – Amarillo Nov. 19, 2009, *pet. ref'd*). The Amarillo Court of Appeals summarized the facts of the case as follows:

> The State presented evidence to show that Amarillo police officers executed a search warrant at a one-bedroom house occupied by appellant and his girlfriend. Both were present when the warrant was executed. Officers found marijuana, methamphetamine, cocaine, and drug paraphernalia in various locations in the small house, along with nearly $1,000 in cash. The house was equipped with video cameras inside. Police found a .380 semi-automatic pistol with a magazine, stored in a Crown Royal bag. The bag was in the bedroom inside a backpack located on the floor, next to a safe and a dresser. The safe contained coins and gift cards. One drawer of the dresser contained marijuana. The backpack also contained a homemade plastic marijuana bong. Appellant told the police all the drugs were his, for his personal use. Both appellant and his girlfriend were arrested.
>
> The next day, appellant's girlfriend placed a phone call to her mother from the Potter County Jail, telling her the police missed a large amount of cash near the bathtub and asking that she retrieve the cash. Police intercepted the call and executed a second warrant, finding nearly $8,000 in cash in the bathroom of appellant's residence, concealed in a Crown Royal bag that appellant admitted was his.
>
> Appellant testified at trial. Although he acknowledged the money and drugs were his, he said the .380 pistol was not his. He testified he did not know

where it came from.  He said the backpack was not his, and that it looked like "a female's bag."  He said the bedroom contained clothes belonging to another female friend, in addition to his girlfriend's clothes.  He further stated that Manuel Campbell, referred to in the record as a "known drug dealer," stayed at the house occasionally and was there just before the police arrived, cooking crack cocaine.  Appellant's testimony also suggested Campbell was angry with him and had reasons to "get" appellant.

*Id.* at *1.

Petitioner filed a state habeas corpus application for each case on December 16, 2010, having shown to have signed the applications on December 6, 2010.  The state habeas corpus application for the marijuana conviction was dismissed, because the sentence had been discharged.  *Ex parte Hester*, No. WR-75,335-03 (Tex. Crim. App. May 18, 2011).  The state habeas corpus applications for the cocaine and methamphetamine cases were filed and set, and the Texas Court of Criminal Appeals granted petitioner the opportunity to file out-of-time petitions for discretionary review in those two cases.  *Ex parte Hester*, Nos. AP-76,499 & AP-76,500, WR-75,335-01 & 75,335-02, 2011 WL 1135922 (Tex. Crim. App. Feb. 9, 2011).  The Court of Criminal Appeals refused petitioner's petitions for discretionary review in both cases. *Hester v. State*, PDR Nos. 310-11 & 311-11 (Tex. Crim. App. May 25, 2011).

Petitioner filed another state habeas corpus application for each case on September 29, 2011, and the applications were signed on September 27, 2011.  The second state habeas corpus application for the marijuana conviction was dismissed, because the sentence had been discharged.  *Ex parte Hester*, No. WR-75,335-04 (Tex. Crim. App. January 11, 2012).  The second state habeas corpus applications for the cocaine and methamphetamine cases were denied without written order.  *Ex parte Hester*, Nos. WR-75,335-05 & WR-75,335-06 (Tex. Crim. App. January 11, 2012).

Petitioner then filed this federal Petition for a Writ of Habeas Corpus with a memorandum of law on March 12, 2012, stating he placed them in the prison mail system on March 6, 2012. Document 1. Also before the Court are respondent's answer and petitioner's reply. Documents 18 & 20.

## II.
## PETITIONER'S ALLEGATIONS

Petitioner appears to contend respondent is holding him in violation of the Constitution and laws of the United States for the following reasons:

1.  Petitioner received ineffective assistance of trial counsel, because counsel:

    (1)  failed to argue the motion to suppress that was filed and failed to preserve the matter for appellate review;

    (2)  failed to move for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978);

    (3)  failed to request a competency test;

    (4)  failed to determine ownership of the firearm;

    (5)  induced petitioner's guilty plea by stating petitioner was eligible for probation, by stating that fifteen years was the maximum sentence the trial court would consider, and by failing to challenge the court's use of unadjudicated extraneous offenses and other matters during the punishment phase;

    (6)  failed to move for dismissal of the methamphetamine case due to lack of proof; and

    (7)  failed to move for dismissal of the deadly weapon matter due to lack of evidence.

2.  Petitioner received ineffective assistance of appellate counsel, because counsel:

    (1)  failed to timely inform petitioner that the convictions had been affirmed, which denied petitioner the right to file a petition for discretionary review;

(2)    failed to raise issues regarding trial counsel's failure to argue the motion to suppress;

(3)    failed to argue the fabrication of the state's claim that petitioner filed off the serial number from the firearm;

(4)    failed to argue there was no evidence to support the methamphetamine conviction; and

(5)    failed to argue the trial court erred in considering unadjudicated extraneous offenses and matters in the punishment phase.

3.    The trial court erred in accepting petitioner's guilty plea, because petitioner presented exculpatory evidence in the punishment phase.

4.    There was no evidence to prove petitioner used or exhibited a deadly weapon.

III.
MARIJUANA CASE - SENTENCE DISCHARGED

Respondent discusses the allegations concerning petitioner's convictions for possession with intent to deliver methamphetamine and cocaine, but notes that while petitioner was convicted of marijuana possession, he has discharged that sentence. Respondent states the marijuana conviction is not relevant to the response. However, petitioner identifies all three convictions as convictions he wishes to challenge in this federal habeas corpus case. Document 1 at p. 2.

The purpose of a federal writ of habeas corpus is to provide relief to a petitioner by freeing him from custody imposed in violation of the Constitution or laws of the United States. Consequently, in order to pursue federal habeas corpus relief, a petitioner must show he is, in fact, "in custody." See 28 U.S.C. §§ 2241(c). Where a petitioner challenges his state custody, he must show he is in custody under the judgment and sentence of a state court and that such custody is in violation of the Constitution or laws or treaties of the United States. *See* 28 U.S.C.

§ 2254(a).  Specifically, the petitioner must be in custody pursuant to the conviction or sentence

challenged in the federal habeas corpus petition.  *Maleng v. Cook*, 490 U.S. 488, 490-91, 109

S.Ct. 1923, 1925, 104 L.Ed.2d 540 (1989).  A habeas petitioner does not remain "in custody"

after the sentence imposed for a conviction has fully expired.  *Id.* at 491-92.  Where a petitioner

is not "in custody" under the challenged conviction, the district court lacks subject matter

jurisdiction to consider the challenge to that conviction.  *Pleasant v. Texas*, 134 F.3d 1256, 1259

(5th Cir. 1998).

Petitioner had fully discharged the two-year sentence assessed for his 2007 marijuana

conviction prior to filing his federal petition and is no longer "in custody" pursuant to that

conviction or sentence.  Consequently, this Court lacks jurisdiction to entertain a challenge to

that 2007 conviction and two-year sentence for possession of marijuana.  Petitioner's petition and

claims pertaining to that conviction should be dismissed.

IV.
STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act, a petitioner may not obtain

habeas corpus relief in federal court with respect to any claim adjudicated on the merits in the

state court proceedings unless the adjudication of the claim resulted in a decision contrary to or

involved an unreasonable application of clearly established federal constitutional law or resulted

in a decision based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings.  28 U.S.C. § 2254(d).

The Texas Court of Criminal Appeals heard and adjudicated on the merits the claims

petitioner presents in his federal habeas corpus petition when it denied petitioner's applications

for state habeas relief without a written order for the methamphetamine and cocaine convictions.

*Ex parte Hester*, Nos. WR-75,335-05 & WR-75,335-06; *see Harrington v. Richter*, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Petitioner's burden before this Court is significantly heightened in that petitioner cannot prevail even if he shows the state court's determination was incorrect. Petitioner must also show the state court unreasonably applied federal law or made an unreasonable determination of the facts. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002).

Petitioner has failed to meet this burden. Further, review of petitioner's claims confirms this petition should be denied as to the cocaine and methamphetamine convictions.

V.

## MERITS OF PETITIONER'S ALLEGATIONS

### A.  Ineffective assistance of trial counsel

### 1.  Waiver of claims by guilty plea

In seven sub-claims, petitioner contends he received ineffective assistance of trial counsel. Respondent argues a plea of guilty waives all claims of ineffective assistance of trial counsel, except for claims of ineffective assistance related to the knowing and voluntary nature of the plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). Respondent asserts that the only ineffective assistance of trial counsel claim not waived by the guilty plea is claim 1(5) that trial counsel induced petitioner's guilty plea by stating petitioner was eligible for probation, by stating that fifteen years was the maximum sentence the trial court would consider, and by failing to challenge the court's use of unadjudicated extraneous offenses and other matters during the punishment phase.

Respondent is correct that a guilty plea waives the violation of constitutional rights that occurred prior to the plea, except for claims of ineffective assistance of counsel regarding the

voluntariness of the guilty plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). The

Supreme Court has stated:

> When a criminal defendant has solemnly admitted in open court that he is in fact
> guilty of the offense with which he is charged, he may not thereafter raise
> independent claims relating to the deprivation of constitutional rights that
> occurred prior to the entry of the guilty plea. He may only attack the voluntary and
> intelligent character of the guilty plea by showing that the advice he received from
> counsel was not within the standards . . ..

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

As explained below in part V(A)(7) of this recommendation, petitioner's plea was

knowing and voluntary. Therefore, petitioner's claim concerning the failure to dismiss the

methamphetamine case due to a lack of proof, claim 1(6), was waived by the guilty plea. That

claim does not involve a challenge to the voluntariness of the guilty plea. *See United States v.*

*Hanyard*, 762 F.2d 1226, 1229-30 (5th Cir. 1985) (guilty plea waived claim of sufficiency of

evidence). Alternatively, and as explained below in this recommendation, that claim about the

proof of the methamphetamine offense lacks merit.

Petitioner raises claims about counsel's failure to argue the motion to suppress, claim

1(1), and failure to request a *Franks* hearing claim 1(2). Counsel informed the trial court that

petitioner wanted to raise the motion to suppress and that if it was denied, petitioner would plead

guilty. Reporter's Record Vol. 2, pp. 9. The trial court considered and denied the motion to

suppress. *Id.* at 14. Petitioner then entered a guilty plea. *Id.* at 15-16. Even so, petitioner's

claims concern matters that arose before the entry of the guilty plea, and petitioner does not

contend his plea was involuntary due to ineffective assistance of counsel regarding the motion to

suppress. Therefore, claims 1(1) and 1(2) were waived by the guilty plea. *See Smith v. Estelle*,

711 F.2d at 682 (guilty plea waived claim of ineffective assistance of counsel for failure to

investigate the legality of the arrest). Alternatively, as explained below, these claims lack merit.

Petitioner's claim regarding trial counsel's statements about punishment, claim 1(5), was not waived by the guilty plea. Petitioner's claim 1(3) asserts trial counsel failed to request a competency test. Although petitioner does not specifically allege he was incompetent to stand trial, the nature of this claim would appear to involve petitioner's competence to stand trial, which would logically concern the knowing and voluntary entry of the guilty plea. Thus, petitioner's claim 1(3) has not been waived by the guilty plea. Claims 1(4) and 1(7) complain of trial counsel's failure to determine ownership of the firearm and failure to seek a dismissal of the deadly weapon issue based on a lack of evidence. The determination of whether petitioner used or exhibited a deadly weapon was a punishment issue that was left open for the judge to decide after the guilty plea. Thus, the claims about counsel's performance regarding the deadly weapon finding were not waived by the guilty plea.

### 2. Standard of review

The proper standard for reviewing a claim of ineffective assistance of counsel is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the two-pronged *Strickland* standard, petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687. An attorney's performance was deficient if the attorney made errors so serious the attorney was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id.* That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption counsel's performance

falls within the wide range of reasonable professional assistance. *Id.* at 689. Strategic choices

made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Id.*

at 690-91. This is a heavy burden which requires a "substantial," and not just a "conceivable,"

likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d

624 (2011); *see also Cullen v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557

(2011).

     Additionally, petitioner must show counsel's deficient performance prejudiced the

defense. To establish this prong, petitioner must show counsel's errors were so serious as to

deprive petitioner of a fair trial. *Strickland*, 466 U.S. at 687. Specifically, to prove prejudice,

petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional

errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's

deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385,

395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel

does not deprive the defendant of any substantive or procedural right to which the law entitles

him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). A

showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th

Cir.1993). If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland*

test, then the Court need not consider the other prong. *Strickland,* 466 U.S. at 697.

     When a state prisoner asks a federal court to set aside a conviction or sentence due to

ineffective assistance of counsel, the federal court is required to use the "doubly deferential"

standard of review that credits any reasonable state court finding of fact or conclusion of law and

that presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v.*

*Titlow,* ___ U.S. ___, 134 S.Ct. 10, 13, 187 L. Ed. 2d 348 (2013).  Petitioner's ineffective

assistance of counsel claims were adjudicated on the merits in a state court proceeding, and the

denial of relief was based on a factual determination that will not be overturned unless it is

objectively unreasonable in light of the evidence presented in the state court proceeding.  *Miller-*

*El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).  A state-court factual

determination is not unreasonable merely because the federal court would have reached a

different conclusion in the first instance.  *Burt,* 134 S.Ct. at 15.  Section 2254(e)(1) provides that

a determination of a factual issue made by a state court shall be presumed to be correct.

Petitioner has the burden of rebutting this presumption of correctness by clear and convincing

evidence.  *Canales v. Stephens,* 765 F.3d 551, 563 (5th Cir. 2014).  When the Texas Court of

Criminal Appeals denies relief in a state habeas corpus application without written order, as in

this case, it is an adjudication on the merits, and is entitled to this presumption.  *Ex parte Torres,*

943 S.W.2d 469, 472 (Tex. Crim. App. 1997); *Singleton v. Johnson,* 178 F.3d 381, 384 (5th Cir.

1999) (recognizing this Texas state writ jurisprudence).

### 3.  *Failure to argue the motion to suppress*

In ground 1(1), petitioner contends trial counsel did not argue the motion to suppress that

was filed and counsel did not preserve the matter for appellate review.  This claim not only was

waived by the guilty plea, it also lacks merit.

Petitioner complains of the affidavit in support of the first search warrant, issued on

January 2, 2007.  He asserts the affidavit relied on a confidential informant, who told a police

officer that petitioner had crack cocaine in petitioner's home.  Petitioner argues the information

was unreliable, because the police officers did not find crack cocaine in the search of the home.

Petitioner also argues that the officer did not corroborate the information, such as with a controlled purchase of drugs or surveillance.

The search warrant affidavit recited that the described house was controlled by Calvin Hester and that the police officer was told by a confidential informant that, within the past 48 hours, the informant saw Hester possess crack cocaine. The affidavit stated that the informant can recognize crack cocaine, because the informant has purchased, observed, and used crack cocaine in the past. The informant had provided officers with information about narcotics traffickers in the past, and on each occasion, the information was reliable, true, and correct. (Clerk's Record Nos. 07-07-00474-CR & 54,996 at pp. 63-64).

A search warrant must be supported by probable cause. *United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993). The Fifth Circuit has explained:

> An affidavit may rely on hearsay—information not within the personal knowledge of the affiant, such as an informant's statement—as long as the affidavit presents a " 'substantial basis for crediting the hearsay.' " [*Illinois v. Gates*, 462 U.S. 213, 242, 103 S.Ct. 2317, 76 L.ed.2d 527 (1983)] (quoting *Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960)); *see also Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); [*United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)]. In determining whether an informant's report is credible, we examine the informant's veracity and basis of knowledge. *See Gates*, 462 U.S. at 230–33, 103 S.Ct. at 2328–29. These factors are relevant considerations under the "totality of the circumstances" test for valuing an informant's report. *See id.* "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 232, 103 S.Ct. at 2329.

*United States v. Laury*, 985 F.2d at 1311. The informant's veracity may be determined from the accuracy of the informant's previous information. *Id.* In the present case, the officer stated that the informant had, in the past, provided information regarding narcotics that was reliable, true, and correct each time. This sufficiently established the informant's veracity. *Id.* Although

corroboration of an informant's information may provide further support for a warrant, particularly when the informant's veracity is not shown, there is no requirement that there be corroboration. *United States v. Blount*, 123 F.3d 831, 836 (5th Cir. 1997).

In the present case, the informant's past reliability, and the informant's statement that he saw petitioner with crack cocaine at the house within the past 48 hours, provided sufficient probable cause for the search warrant. *See United States v. McKnight*, 953 F.2d 898, 905 (5th Cir. 1992); *Christian v. McKaskle*, 731 F.2d 1196, 1201 (5th Cir. 1984). Because petitioner's motion to suppress lacked merit, petitioner did not receive ineffective assistance when counsel did not present a specific argument regarding the informant. Petitioner has not shown that the state court's rejection of this sub-claim was unreasonable.[1]

### 4. Failure to move for a Franks hearing

In ground 1(2), petitioner contends counsel should have requested a *Franks* hearing to determine the veracity of the search warrant affidavit. Specifically, petitioner contends the affidavit referred to petitioner's alias as "Infinity," instead of his correct alias "Infinite." Petitioner complains the affidavit referred to crack cocaine, but the officers did not find crack cocaine in the search. This claim was not only waived by the guilty plea, but it too lacks merit.

If a search warrant affidavit contains a material false statement that was a deliberate falsehood or that was made in reckless disregard for the truth, the issue becomes whether the remainder of the affidavit provided probable cause to support the search warrant. *Moreno v. Dretke*, 450 F.3d 158, 169 (5th Cir. 2006). It is the affiant's statements in the affidavit, and not

---

[1] Interestingly, petitioner's testimony was that an individual, Manuel Campbell, was cooking crack cocaine shortly before the police arrived and conducted the search. Reporter's Record Vol. 3, pp. 60-61.

the informant's statements to the affiant, that are the subject of a *Franks* hearing.

Petitioner has not shown the affiant police officer's statements in the affidavit regarding crack cocaine were deliberate falsehoods by the affiant. Specifically, petitioner has not shown that the informant did not tell the officer that he saw petitioner possess crack cocaine in the house. Also, petitioner has not shown that the officer/affiant deliberately fabricated anything regarding the alias. Additionally, there was evidence that petitioner's girlfriend referred to petitioner as "Infinity." Reporter's Record Vol 3, p. 34. Moreover, petitioner's alias, whether "Infinite" or "Infinity," was not material, and the remainder of the affidavit supported the search warrant. Because petitioner has not shown counsel had a basis for seeking a *Franks* hearing and that a *Franks* hearing would have been successful, petitioner has not shown that the state court's rejection of this sub-claim was unreasonable.

### 5.  Failure to request a competency test

In ground 1(3), petitioner claims he suffered a brain injury in a motor vehicle accident in 1999, and had been declared incompetent to stand trial in Colorado in 1999. Petitioner does not claim he was actually incompetent to stand trial in the present cases, only that counsel should have requested a competency examination.

A person cannot be subjected to a trial if the person lacks the capacity to understand the criminal trial proceedings and to consult with counsel and assist in preparing a defense. *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). If evidence before the trial court presents a bona fide doubt about the defendant's competency, the trial court must hold a competency hearing. *Pedrero v. Wainwright*, 590 F.2d 1383, 1387 (5th Cir. 1979).

Attached to petitioner's state writ application is a report from the Superintendent of the

Colorado Mental Health Institute finding that petitioner was competent in April 2000. State habeas corpus record WR-75,335-05 at 79-81. Petitioner testified he had a head injury in the past, some time ago, but that he was mentally fit at the time of trial in the present drug cases and at the time of the present drug offenses. Reporter's Record Vol. 2, pp. 9. Also, petitioner's counsel told the trial court that petitioner was competent to stand trial and that petitioner had a full understanding of the nature of the proceedings. *Id.* at p. 18. Petitioner answered counsel's questions and explained how he wanted to proceed with the motion to suppress, to then plead guilty if the court denied the suppression motion, and that he wanted to have the trial court decide punishment. *Id.* at pp. 9-12. Petitioner testified at the punishment hearing. Reporter's Record Vol 4, pp. 36-66. Petitioner's statements and testimony at trial show he understood the nature of the proceedings and was able to consult with counsel and assist in preparing a defense. Petitioner's counsel believed petitioner was competent. Petitioner has not shown he was incompetent or even that there was any reason to question his competence. He has not shown there was evidence he was incompetent at the time of trial. Therefore, he has not shown deficient performance or prejudice due to counsel's failure to request a competency examination. *See Moody v. Johnson*, 139 F.3d 477, 481-82 (5th Cir. 1998); *Carter v. Johnson*, 131 F.3d 452, 463-464 (5th Cir. 1997). Petitioner has not shown that the state court's rejection of this sub-claim was unreasonable.

### 6.  *Failure to determine ownership of the firearm*

In ground 1(4), petitioner asserts counsel should have determined who owned the firearm which petitioner was found to have used or exhibited. Police officers found the firearm, a .380 handgun, in a Crown Royal bag along with a marijuana pipe in a backpack next to a safe in the

bedroom. Petitioner claims the prosecutor argued that petitioner filed off the serial number of the firearm. However, the prosecutor argued, "And you can look at the gun and you can see the serial number is filed off." Reporter's Record Vol. 3, p. 72. Petitioner asserts that the photographs of the gun introduced as exhibits show the serial number is on the firearm. State's Exhibit 2 contains several photographs. Among them are photos of the firearm, which appear to show the number "707415" engraved on the gun. Petitioner complains counsel did not object to the prosecutor's argument and that counsel did not establish who owned the firearm. Petitioner claims that the firearm belonged to a woman named Brandy, one of the two women who also lived in the house, and that counsel should have called Brandy to testify the firearm was hers. The other woman who lived in the house was petitioner's girlfriend.

The prosecutor did argue that the serial number was filed off the handgun. The prosecutor did not argue petitioner was the person who removed the serial number. Even if petitioner is correct that the serial number was still on the firearm, the prosecutor's statement, that the serial number had been filed off of the firearm, was argument — not evidence. *See Mata v. State*, 1 S.W.3d 226, 228 (Tex. App. – Corpus Christi 1999) ("it is axiomatic that argument of counsel is not evidence"). The trial court would have recalled whether there was evidence that serial number had been removed or whether petitioner filed off the serial number. The trial court certainly could have determined that the firearm had a serial number. Moreover, whether the firearm had a serial number or not was not an issue that affected the determination of whether petitioner used or exhibited the firearm in committing the drug offense. Petitioner has not shown deficient performance and he has not shown he was harmed by defense counsel's failure to object to the prosecutor's argument regarding the serial number.

Also, petitioner does not state what counsel would have discovered if he researched the serial number of the firearm. It is not necessary for a person to be the legal owner of a firearm for there to be a finding that the person used or exhibited the firearm in the commission of the offense. *Smith v. State*, 176 S.W.3d 907, 919 (Tex. App.—Dallas 2005, *pet. ref'd*).

To show ineffective assistance of counsel for failure to present a witness, petitioner must identify the witness, demonstrate the witness was available to testify, and set out the content of the witness's proposed testimony. *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001). Petitioner has not shown that Brandy was available to testify, and he has not established what her testimony would have been. Even if Brandy would have testified that the firearm was hers, petitioner could have also used the firearm by having it available to facilitate his possession of drugs and/or to protect his drugs. The issue was not whether petitioner owned the firearm. Petitioner has not shown deficient performance or prejudice for the failure to object to the prosecutor's argument and for the failure to research the gun's serial number and to have Brandy testify. Petitioner has not shown that the state court's rejection of this sub-claim was unreasonable.

### 7. Induced petitioner's guilty plea; failure to object to extraneous punishment matters

In ground 1(5), petitioner claims counsel erroneously stated the trial court would consider probation and the maximum sentence the court would consider was fifteen years. He also asserts counsel failed to object to extraneous offenses and other matters during the punishment phase.

A federal court will set aside a guilty-plea conviction only if the petitioner can allege and prove that his plea was not a voluntary, knowing, and an intelligent act. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed. 2d 747 (1970). To be constitutionally valid, a guilty

plea must be intelligent and voluntary.  *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).  A plea is voluntary if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.  *United States v. Washington*, 480 F.3d 309, 315 (5th Cir. 2007).  To be voluntary, a guilty plea must not be produced by actual or threatened physical harm or by mental coercion overbearing the will of the defendant or by state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000).  For a guilty plea to be intelligently entered, the defendant must be competent, have notice of the nature of the charge against him, and understand the consequences of a guilty plea, including the nature of the constitutional protection he is waiving.  *Id.* at 364-65.  To understand the consequences of a guilty plea, the defendant must know the maximum prison term and fine for the offense charged.  *Santos-Sanchez v. United States*, 548 F.3d 327, 336 (5th Cir. 2008).  A defendant's statements in court and in plea documents that his plea was knowing and voluntary and that he understood the rights he was waiving create a presumption that in fact the plea is valid.  *United States v. Washington*, 480 F.3d at 316.

Petitioner was admonished in writing that the range of punishment for each second degree felony, enhanced with a prior conviction, was five to ninety-nine years or life.  State habeas corpus record WR-75,335-05 at 22; WR-75,335-06 at 22.  Petitioner stated his plea was freely, knowingly, and voluntarily entered and that no one promised him anything, including community supervision (probation), in order to cause him to plead guilty.  *Id.* at 23.  Petitioner testified he understood that the judge could consider probation, that no one promised that would happen, and that the judge could consider the full range of punishment.  Reporter's Record Vol. 2, p. 10.

Petitioner testified he understood the range of punishment for the second degree felonies, as enhanced, was five years to life. *Id.* at 11. There was no agreed punishment recommendation. *Id.* at 17. Counsel had not discussed the deadly weapon issue with petitioner before the guilty pleas, perhaps because counsel misread the indictment. *Id.* at 19. The court, however, recessed so petitioner and counsel could discuss the deadly weapon issue. *Id.* After the recess, counsel stated that the deadly weapon issue would be decided by the court in the punishment phase, and petitioner stated that he understood the court would decide the deadly weapon issue. *Id.* at 19-20. It is apparent from the record not only that petitioner and counsel discussed the deadly weapon issue, but that petitioner was fully aware the issue would be determined by the court.

Petitioner's claims about counsel's advice regarding probation and length of sentence are directly refuted by the record. Petitioner's written and oral plea statements affirmatively stated there was no promise regarding the sentences. He has not overcome the strong presumption of verity attached to his solemn declarations in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ("representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as the findings made by the trial judge accepting the plea, constitute a formidable barrier to any subsequent collateral proceedings"); *see also Bonvillain v. Blackburn*, 780 F. 2d 1248, 1250 (5th Cir 1986.) (plea documents executed by petitioner are prima facie proof of the matters recited therein and conclusory allegations are not sufficient to overcome the strong presumption of verity that attaches to them).

Petitioner's claim is not that defense counsel promised the trial court would grant probation, but that the trial court could consider probation. Even if defense counsel informed petitioner that the trial court could consider probation, that would not have been erroneous

advice.  Probation was dependent upon whether there was a deadly weapon finding and upon the

term of years assessed for the sentence.  A deadly weapon finding makes a defendant ineligible

for probation.  *See Hooks v. State*, 860 S.W.2d 110, 111-12 (Tex. Crim. App. 1993).  As the trier

of fact on punishment, the trial court had the authority, but not the obligation, to make an

affirmative finding on the use of a deadly weapon.  *Banks v. State*, 29 S.W.3d 642, 646 (Tex.

App.—Houston 2000, *pet. ref'd*).  Therefore, if the trial court did not make a finding that

petitioner used a deadly weapon, then the trial court could consider probation, depending on the

length of sentence.

Petitioner's request that this Court consider new Supreme Court precedent (Doc. 24) is

GRANTED, and this Court considers petitioner's argument presented therein.  Petitioner relies

on *Burt v. Titlow*, ___ U.S. ___, 134 S.Ct. 10, 13, 187 L. Ed. 2d 348 (2013), to argue that trial

counsel should have had the guilty plea withdrawn when petitioner contested the deadly weapon

issue.  It is not clear that petitioner exhausted this claim in state court, but this Court may deny a

claim on the merits, even if the claim is unexhausted.  *See* 28 U.S.C. § 2254(b)(2); *Reed v.

Stephens*, 739 F.3d 753, 780 (5th Cir. 2014).

Petitioner appears to argue that the use or exhibition of a deadly weapon was an element

of the offenses and that when petitioner pleaded guilty but then contested whether he used or

exhibited a deadly weapon finding, the guilty plea should have been withdrawn.  However, use of

a deadly weapon, in the context of a deadly weapon affirmative finding, is not an element of a

charged offense under Texas law; it is a punishment issue.  *Ables v. Scott*, 73 F.3d 591, 593-94

(5th Cir. 1996).  Petitioner's challenge to the deadly weapon allegation did not invalidate his

guilty plea.  He pleaded guilty to possessing drugs, not to using a deadly weapon.  There was no

need for any withdrawal of petitioner's guilty plea when petitioner disputed the deadly weapon

issue in the punishment or sentencing phase.

Petitioner's plea was not rendered involuntary by counsel's advice regarding punishment

and length of sentence. The record shows petitioner's guilty plea was knowingly and voluntarily

entered. Petitioner has not shown the state court's rejection of this sub-claim was unreasonable.

Petitioner also asserts counsel did not object when the trial court stated the following

before assessing the sentences:

> The – based on the evidence that I have heard, the evidence that was introduced
> here, the video, concerning the video equipment and the monitoring equipment,
> the many containers that were used to conceal the drugs, the measuring
> equipment, and other containers of concealed drugs, the amount of money found
> and – and the fact that there was a weapon in proximity to – even though it was
> just a bong or a sack – to where it was in proximity to the drugs, the Court finds
> that this evidence is overwhelming that Mr. – although just charged with
> possession, he probably was doing something else that he shouldn't have done.

Reporter's Record Vol. 3, p. 74. Petitioner contends the trial court erred in considering

extraneous matters when the court stated petitioner was probably doing something else that he

should not have done, and trial counsel did not object.

The evidence summarized by the trial court, however, tended to show petitioner was not

merely possessing drugs for personal use, but that he had a drug operation, which in turn tended

to show an intention to deliver drugs, which was an element of the offenses. The trial court's

reference to petitioner's doing something else he should not have done was likely a reference to

petitioner's apparent drug operation. The trial court was entitled to consider that evidence and

the inferences that could be reasonably drawn from the evidence as showing intent to deliver the

drugs, in determining an appropriate punishment for the offenses. There was nothing to which

counsel could have successfully objected. Petitioner has not shown deficient performance or

prejudice, and he has not shown the state court's rejection of this sub-claim was unreasonable.

### 8. Failure to move for dismissal of the methamphetamine case due to lack of proof

In ground 1(g), petitioner argues there was no proof he possessed methamphetamine, because the officer who testified did not identify any of the exhibits as methamphetamine. Petitioner points out that the officer testified, when looking at the containers found in the house, "I don't know if the meth is in this one or not." Reporter's Record Vol. 3, p. 18. Petitioner's guilty plea, however, waived this claim. Even so, the claim lacks merit.

Petitioner pleaded guilty, and there is no constitutional requirement that a guilty plea be supported by evidence. *Smith v. McCotter*, 786 F.2d 697, 702-03 (5th Cir. 1986). Also, petitioner's judicial confession stated he committed the acts alleged in the indictment. State habeas corpus record WR75,335-06 at 25. The officer testified that the officers found methamphetamine in the house. *Id.* at 25. Thus, there was sufficient evidence to support the conviction in the methamphetamine case. Petitioner has not shown that the state court's rejection of this sub-claim was unreasonable.

### 9. Failed to move for dismissal of the deadly weapon matter due to lack of evidence

In ground 1(7), petitioner claims trial counsel should have moved for a dismissal of the deadly weapon allegations, because there was no evidence showing he used or exhibited a firearm in the commission of the offenses. Petitioner raised issues as to the sufficiency of the evidence to support the deadly weapon finding on direct appeal. The state appellate court addressed these issues as follows:

> An affirmative deadly weapon finding may be made when the State establishes, inter alia, (1) that a deadly weapon was used or exhibited during the

commission of a felony offense or (2) that the defendant was a party to the offense and knew that a deadly weapon would be used or exhibited. FN3 Tex. Code Crim. Proc. Ann. art. 42 .12, § 3g(a)(2) (Vernon Supp. 2008). Any employment of a firearm or other deadly weapon, even its simple possession, to facilitate the commission of another offense constitutes a "use" of the weapon. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App.1989).

> FN3. A firearm is a deadly weapon per se. Tex. Penal Code Ann. §1.07(a)(17)(A) (Vernon 2003).

In *Patterson*, officers executing a search warrant found the defendant sitting on a couch near a table on which methamphetamine was located. Id. at 939. A pistol was on the couch beside the defendant's leg. *Id*. The court held that the evidence supported a finding that the defendant used the pistol to facilitate his possession of the methamphetamine. *Id*. at 942. In *Gale v. State*, twenty pounds of marihuana, several unloaded firearms, and ammunition for those firearms were found in the bedroom closet of the defendant's house. *Gale v. State*, 998 S.W.2d 221, 223 (Tex. Crim. App.1999). The court held that the evidence supported a finding that the defendant used the weapons to facilitate his possession of the marijuana. *Id*. at 226. In *Coleman v. State*, drugs and drug paraphernalia were found throughout the defendant's residence. *Coleman v. State*, 145 S.W.3d 649, 650–51 (Tex. Crim. App.2004). In a bedroom, officers found a pistol, a rifle, and a safe containing bottles of PCP and a large amount of money. *Id*. at 651. The court held that a rational trier of fact could find that the defendant used the firearms to facilitate his possession and distribution of the drugs. *Id*. at 655. In *Wynn v. State*, the court reversed a deadly weapon finding because the defendant was charged as a party to the offense and the evidence showed he was not in the house with the drugs and guns, he was not the only occupant of the house, the owner of the guns was not determined, and no guns or drugs were found in the only room connected with the defendant. *Wynn v. State*, 847 S.W.2d 357, 360–61 (Tex. App.-Houston [1st Dist.] 1993), *aff'd*, 864 S.W.2d 539 (Tex. Crim. App.1993).

Courts have recognized that it is common for narcotics dealers to possess firearms for the purpose of protecting themselves because they possess large amounts of drugs and cash. *See, e.g., Moreno v. State*, 978 S.W.2d 285, 289 (Tex. App.-Fort Worth 1998, *no pet.*). *See also Wilson v. State*, 132 S.W.3d 695, 698 (Tex. App.-Amarillo 2004, *pet. ref'd*) (recognizing it is "rather settled" that weapons are associated with the drug trade). The Court of Criminal Appeals has noted that a firearm is "used" during the commission of the felony offense of possessing contraband in the sense that the firearm protects and facilitates the care, custody and management of the contraband. *Gale*, 998 S.W.2d at 224. *See also Dimas v. State*, 987 S.W.2d 152, 154–55 (Tex. App.-Fort Worth 1999, *pet. ref'd*) (narcotics supervisor testified it was customary for drug dealers to have

firearms and "use" them to protect themselves, their drugs, and their money).

Appellant argues his case is distinguishable from *Patterson*, and is more similar to *Wynn*. He points to evidence showing he was not the only occupant of the house, and that his girlfriend knew the location of the $8000 hidden in the bathroom. But the evidence shows appellant was the primary occupant of the small house. Among the items police found there was a rent receipt in appellant's name. Appellant testified his relationship with his girlfriend was of long standing, and testified she, like appellant, sold marijuana. Neither her presence in the house nor her knowledge of the hidden cash weakens the incriminating inferences properly drawn from the presence of the pistol in the bedroom. *See also Charles v. State*, 915 S.W.2d 238, 241 (Tex. App.-Beaumont 1996, pet. ref'd) (also distinguishing *Wynn*).

Appellant also points out the evidence of the locations at which the different drugs were found in the house is not specific, and argues there is thus no evidence the pistol and the drugs were found in close proximity. We disagree. Appellant testified the marijuana blunts were in the dresser drawer, and other evidence also shows marijuana in the bedroom. Appellant also testified powder cocaine and additional marijuana were found in the refrigerator in the kitchen. While the pistol was not in the same container as any of the drugs, it was found very near the dresser. Further, the bedroom and the kitchen of the house were immediately adjacent, so the pistol was within feet of the drugs located there.

Citing *Wynn*, appellant also argues there is no evidence his fingerprints were found on the gun or in the room where it was found, others had access to the house and no evidence shows he owned the gun. Appellant is correct the record contains no fingerprint evidence. But fingerprint evidence was unnecessary to establish that appellant lived in the one-bedroom house, that the room in which the pistol was found was his bedroom, and that the backpack containing the pistol was on the floor along the wall between the bedroom and the bathroom, covered by a blanket. Appellant testified to those facts. Appellant denied the gun was his, but it was in his bedroom among other items he acknowledged were his, and the trial court was not required to accept his denial. *See Cain*, 958 S.W.2d at 408–09.

By his guilty plea, appellant admitted he possessed the cocaine and methamphetamine with the intent to distribute it. He also plead guilty to possession of marijuana and testified he sold marijuana blunts, and "a block of weed with a whole bunch of rolled up blunts" were in the bedroom dresser. The gun was found inside the nearby backpack in a Crown Royal bag, and appellant acknowledged ownership of the $8000 cash found in another stashed Crown Royal bag. Based on the standard discussed in *Patterson*, 769 S.W.2d at 941, the fact-finder could, from the evidence it heard, infer that appellant was in

possession of the gun found in his bedroom and it was used to protect and facilitate his possession of drugs. *See Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App.2007) (discussing permissible inferences). The nature of the weapon supports that conclusion. *See Coleman*, 145 S.W.3d at 655 (Cochran, J., concurring).

Viewing all the evidence in light most favorable to the judge's verdict, we find that the evidence is sufficient to allow the fact finder to determine beyond a reasonable doubt that appellant possessed the weapon and used it to facilitate possession and intended distribution of marijuana, cocaine, and methamphetamine. Accordingly, we find the evidence legally sufficient to support the trial court's finding that appellant used a deadly weapon during the commission of the three drug offenses. Appellant's first three issues are overruled.

On the same evidence, we find the evidence is also factually sufficient to support the trial court's affirmative deadly weapon findings. Appellant testified that his girlfriend and Campbell had access to his home, and effectively argues the gun could have belonged to either of them. As noted, he also testified Campbell was out to "get" him. Viewing the evidence in a neutral light, we find that favoring the findings is not so weak, nor the contrary evidence appellant emphasizes so strong, as to make the trial court's findings clearly wrong or manifestly unjust. Accordingly, we hold that the evidence is factually sufficient to support the finding that appellant used a deadly weapon during the commission of the three narcotics offenses. We overrule appellant's fourth, fifth and sixth issues.

*Hester v. State*, 2009 WL 3925359 at **2-4.

Trial counsel presented evidence on the deadly weapon issue through petitioner's testimony and through cross-examination of the police officer regarding the location of the firearm. Counsel argued the trial court should not make a deadly weapon affirmative finding and thoroughly litigated the deadly weapon issue. Petitioner has not shown what more counsel could have done. Any motion to dismiss the deadly weapon allegation due to a lack of evidence would have been denied, because the trial court found the evidence sufficient and made a deadly weapon finding. A failure to move for dismissal of the deadly weapon allegation did not result in a failure to preserve the deadly weapon issue for appellate review. The appellate court reviewed

the issue and held there was sufficient evidence supporting the deadly weapon finding. Petitioner has not shown the state court unreasonably determined whether there was sufficient evidence he used or exhibited a deadly weapon. A motion to dismiss the deadly weapon allegation based on a lack of evidence would have been futile, and defense counsel is not required to make futile motions. *Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013). Petitioner has not shown either deficient performance or prejudice due to counsel's failure to seek a dismissal of the deadly weapon allegation. Petitioner has not shown the state court's rejection of this sub-claim was unreasonable.

### B. Ineffective assistance of appellate counsel

### 1. Standard of review

To make out a claim of ineffective appellate counsel, a petitioner must meet the two-prong test of *Strickland v. Washington. Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). To establish deficient performance, a petitioner must show that counsel unreasonably failed to discover and raise nonfrivolous issues. *Id.* To establish prejudice, the petitioner "must show a reasonable probability that, [but for counsel's error], he would have prevailed on appeal." *Id.* at 285-86 (citing *Strickland,* 466 U.S. at 694). To do this, he must show "that a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Id.* at 288. The federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law and that presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v. Titlow,* ___ U.S. ___, 134 S.Ct. 10, 13, 187 L. Ed. 2d 348 (2013).

*2. Failure to timely inform petitioner*
*that the convictions had been affirmed*

In ground 2(1), petitioner asserts appellate counsel did not let petitioner know the convictions had been affirmed on appeal in time for petitioner to file petitions for discretionary review. Petitioner raised this claim in his first state habeas corpus applications, and the Court of Criminal Appeals granted relief in the form of the opportunity to file out-of-time petitions for discretionary review in the cocaine and methamphetamine cases. *Ex parte Hester*, Nos. AP-76.499 & AP–76,500, WR-75,335-01 & WR-75,335-02, 2011 WL 1135922 (Tex. Crim. App. Feb. 9, 2011). The writ application for the marijuana case was dismissed because the sentence had been discharged. *Ex parte Hester*, No. WR-75-335-03 (Tex. Crim. App. May 18, 2011). After being granted state habeas relief, petitioner filed petitions for discretionary review, which were refused. *Hester v. State*, PDR Nos. 310-11 & 311-11 (Tex. Crim. App. May 25, 2011).

Petitioner has received the relief he seeks here. After obtaining state habeas relief, petitioner was no longer prejudiced by counsel's failure to timely inform petitioner about the outcome of the appeals in the state intermediate appellate court, because petitioner's petitions for discretionary review were considered by the Court of Criminal Appeals. Thus, petitioner is not entitled to federal habeas corpus relief on this sub-claim.

*3. Failure to raise issues regarding trial counsel's*
*failure to argue the motion to suppress*

In ground 2(2), petitioner asserts appellate counsel failed to raise issues about trial counsel's failure to argue the motion to suppress and related issues about the intrusion into petitioner's home. As explained in part V(A)(3) of this recommendation, there was no merit to the motion to suppress and any related search issues presented. Petitioner has not shown he

received ineffective assistance of trial counsel in regard to the motion to suppress. Therefore, petitioner did not receive ineffective assistance of appellate counsel for failure to raise those issues about trial counsel. Petitioner has not shown the state court's rejection of this sub-claim was unreasonable.

### 4. Failure to argue the state's fabrication that petitioner filed off the serial number from the firearm

In ground 2(3), petitioner argues appellate counsel should have argued that the prosecutor fabricated the notion that petitioner filed off the serial number from the firearm. As explained in part V(A)(6) of this recommendation, the prosecutor's argument regarding the serial number was just that – argument. It was not evidence. Also, the presence or absence of a serial number had nothing to do with whether petitioner used or exhibited the firearm. The prosecutor's argument regarding the serial number was harmless error at the most. Consequently, petitioner has not shown appellate counsel rendered ineffective assistance for failing to raise this issue, and petitioner has not shown the state court's rejection of this sub-claim was unreasonable.

### 5. Failure to argue there was no evidence to support the methamphetamine conviction

In ground 2(4), petitioner contends appellate counsel failed to argue the lack of evidence supporting the methamphetamine conviction. As explained in part V(A)(8) of this recommendation, there was sufficient evidence to support the methamphetamine conviction. Petitioner has not shown appellate counsel rendered ineffective assistance for failing to argue this issue, and he has not shown the state court's rejection of this sub-claim was unreasonable.

### 6. Failure to argue the trial court erred in considering extraneous matters

In ground 2(5), petitioner claims appellate counsel should have argued that the trial court

erroneously considered extraneous matters in the punishment phase. As explained in part V(A)(7) of this recommendation, the trial court did not err in that regard. Therefore, appellate counsel did not render ineffective assistance for failing to argue this issue, and petitioner has not shown the state court's rejection of this sub-claim was unreasonable.

### C. *Trial court should not have accepted the guilty plea, because petitioner presented exculpatory evidence*

In ground 3, petitioner contends the trial court should not have accepted the guilty plea, because petitioner denied using or exhibiting a deadly weapon. As explained in part V(A)(7) of this recommendation, use of a deadly weapon, in the context of a deadly weapon affirmative finding, is not an element of the charged offense under Texas law. Instead, it is a punishment issue. *Ables v. Scott*, 73 F.3d at 593-94. Petitioner's contesting of the deadly weapon issue did not invalidate his guilty plea. He pleaded guilty to possessing drugs, not to using a deadly weapon. There was no need for the trial court to withdraw, reject, or set aside petitioner's guilty plea when petitioner only disputed the deadly weapon issue in the punishment phase and did not contest the drug charges. Petitioner has not shown the state court's rejection of this claim was unreasonable.

### D. *No evidence to prove petitioner used or exhibited a deadly weapon*

In ground 4, petitioner contends there was no evidence that he used or exhibited a deadly weapon. As explained in part V(A)(9) of this recommendation, there was sufficient evidence to support the affirmative finding of a deadly weapon. The Supreme Court has held that criminal liability for "use" of a firearm under 18 U.S.C. § 924(c) requires more than mere possession. *Bailey v. United States*, 516 U.S. 137, 143, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995). The Supreme Court held "use" under the federal statute includes firing or attempting to fire,

brandishing, displaying, bartering, and striking with a firearm. *Id*. at 148. "Use" does not include a situation in which a person has a gun available nearby to grab and use if necessary. *Id*. In 1998, in response to *Bailey*, Congress added the word "possesses" to 18 U.S.C. § 924(c). *United States v. O'Brien*, 560 U.S. 218, 232-33, 130 S. Ct. 2169, 176 L. Ed. 2d 979 (2010). The Supreme Court's holding in *Bailey* was a matter of federal statutory interpretation, and it was not a matter of federal constitutional law. Therefore, it is not binding on a state court's interpretation of a state statute. The Texas Court of Criminal Appeals did not adopt the United States Supreme Court's construction of the word "use" in the federal statute when interpreting the word "use" in the state statute. *Gale v. State*, 998 S.W.2d 221, 224-25 (Tex. Crim. App. 1999). A state court's interpretation of state law is binding on a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005); *see also Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011). Petitioner has not shown the state court's rejection of this ground was unreasonable.

III.

<u>RECOMMENDATION</u>

Petitioner has failed to present any cognizable or meritorious claim warranting federal habeas corpus relief. Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner CALVIN JARROD HESTER be DISMISSED as to the marijuana conviction and DENIED as to the cocaine and methamphetamine convictions.

IV.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___6th___ day of February 2015.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* <u>NOTICE OF RIGHT TO OBJECT</u> \***

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).